UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
PILOT ENTERPRISES INC.,                              :
                                                     :
                      **Plaintiff,**       :
                                                     :       **07 Civ. 8520 (HB)**
        - against -                          :
                                                     :       <u>**OPINION & ORDER**</u>
BRODOSPLIT INC., BRODOSPLIT PLOVIDBA                 :
d.o.o., BRODOSPLIT SHIPPING LTD.,                    :
BRODOGRADJEVNA INDUSTRIJA SPLIT d.d.,                :
BRODOSPLIT BRODOGRADILISTE d.o.o., and               :
BRODOSPLIT SHIPYARD, LTD.,                           :
                                                     :
                      **Defendants.**     :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

      Pilot Enterprises ("Pilot") filed its Verified Complaint against Defendants Brodosplit Inc., et al., ("Brodosplit") in this proceeding on October 2, 2007.  An *Ex Parte* Order for Issuance of Process of Maritime Attachment and Garnishment was entered on October 30, 2007 (the "Rule B Attachment Order").  Brodosplit filed the instant motion December 19, 2008 seeking vacatur of the Rule B Attachment Order or, in the alternative, a reduction in the amount of the attachment.  For the reasons that follow, Brodosplit's motion to vacate is denied, and its motion to reduce the attachment amount is granted.

### I.  FACTUAL BACKGROUND

      The instant Rule B action is related to another Rule B action previously before this Court, *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 06-cv-839 (the "Citgo Action").  Both actions arise out of the same two maritime contracts: a time charter-party between Pilot and BS Sun Shipping ("BS Sun") for a vessel named the M/T STINICE (the "Vessel") and a voyage charter-party between Pilot and Citgo for the Vessel to carry diesel oil from the Virgin Islands to New Jersey.  Citgo alleged that the cargo had been contaminated in transit and moved to compel arbitration with BS Sun for the contamination.  On February 2, 2006, BS Sun filed the Citgo Action, seeking a declaratory judgment and alleging that no valid arbitration agreement existed between BS Sun and Citgo, and in addition seeking a permanent stay of arbitration, contending it was not a party to the voyage charter-party and Pilot had no authority to bind BS Sun to the

1

voyage charter-party. Citgo moved to dismiss the petition and to compel arbitration. On August 8, 2006, this Court issued an Opinion & Order denying the motion and finding that BS Sun had made a sufficient showing that it was not a party to the arbitration agreement and that Pilot lacked authority to bind it to the terms of the voyage charter-party.

Pilot intervened in the Citgo Action in March 2007, alleging breach of the time charter-party and seeking a declaratory judgment providing for a Rule B attachment against BS Sun to secure disputed funds in a London arbitration. The Court accepted letter briefs regarding whether a Rule B Attachment Order should issue against BS Sun. BS Sun argued that it was "present" in the district by virtue of having commenced the Citgo Action. On September 7, 2007, this Court issued an Opinion & Order granting Pilot's motion to intervene, agreeing that its claims were substantially intertwined with questions of law and fact common to the claims at issue in the Citgo Action. On October 12, 2007, this Court issued a Rule B Attachment Order against BS Sun.

Ten days earlier, on October 2, 2007, Pilot had filed a separate Verified Complaint against Brodosplit to secure funds here based on the same breach of the time charter-party, which it was pursuing in London. The underlying claim in the London arbitration was in the amount of US $617,000. The Verified Complaint alleges that Brodosplit is the alter-ego of BS Sun and is therefore liable to Pilot on the same theory that BS Sun would be. The Verified Complaint prayed for an order of attachment in the amount of US $1,234,000. The Rule B Attachment Order authorizing the attachment and garnishment of that amount was entered on October 30, 2007.

## II. DISCUSSION

**A.     Vacatur of Rule B Attachment Order**

The power to grant an attachment in maritime actions "is a unique aspect of admiralty jurisprudence that has deep historic and constitutional roots." *Williamson v. Recovery Ltd. P'Ship*, 542 F.3d 43, 48 (2d Cir. 2008). The attachment power "is an inherent component of the admiralty jurisdiction given to federal courts under Article III of the Constitution." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006) (citing U.S. Const. art. III, § 2). The purpose of this power has been recognized as being twofold: "first, to gain jurisdiction over an absent defendant; and second, to assure satisfaction of a judgment." *Id.*

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims governs the process by which a plaintiff may attach an absent defendant's assets. Rule B provides, in relevant part, that "[i]f a defendant is not found within the district . . . a verified complaint may contain a

prayer for process to attach the defendant's tangible or intangible property – up to the amount sued for – in the hands of garnishees named in the process." Fed. R. Civ. P. Supp. R. B(1)(a). In addition to satisfying the filing and service requirements, a plaintiff must establish four factors for a Rule B attachment to issue: (1) plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment. *Aqua Stoli*, 460 F.3d at 445. If these four elements are shown, a Rule B attachment must issue. However, a district court must vacate an attachment if the plaintiff fails to sustain its burden of showing that it has satisfied Rule B's requirements. *Id.* at 445; *Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 426 (S.D.N.Y. 2008); *see also Williamson v. Recovery Ltd. P'Ship*, 542 F.3d 43, (2d Cir. 2008) ("Where a defendant contests an attachment of its property . . ., plaintiffs must demonstrate . . . why the attachment should not be vacated."); Fed. R. Civ. P. Supp. R. E(4)(f).[1]

The question of presence is determined as of the date the complaint is filed. *Marimed Shipping, Inc. v. Persian Gulf Shipping Co. Inc.*, 567 F. Supp. 2d 524, 527 (S.D.N.Y. 2008) (citations omitted). Although Rule B does not define what it means for the defendant to be "found within the district," the Second Circuit recently reiterated that the "presence" inquiry requires "a two-pronged inquiry: first, whether Defendants can be found within the district in terms of jurisdiction, and second, if so, whether they can be found for service of process" (the "*Seawind* Test"). *STX Panocean (UK) Co., Ltd. v. Glory Wealth Shipping Pte Ltd.*, No. 08-6131-cv, 2009 U.S. App. LEXIS 5751, at *7-8 (2d Cir. Mar. 19, 2009) (quoting *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581-82 (2d Cir. 1963)). The court went on to settle a disagreement that previously existed in this District by expressly holding that the presence of an agent authorized to accept process is in itself sufficient to establish both prongs of the *Seawind* Test for a defendant to be "found" in the district. *Id.* at *8. Relatedly, the court found that the existence of sufficient minimum contacts in the traditional sense of the personal jurisdiction inquiry is *not* sufficient in itself to establish presence in the district, absent a showing of actual presence that would allow a plaintiff to locate the defendant for the service of process. *Id.* at *8-9. Therefore, according to the Second Circuit's analysis, consent to personal jurisdiction is only part

---

[1] The Second Circuit has also found that even if the plaintiff carries this burden, the district court may still vacate the attachment if the defendant can show that (1) it is present in a convenient adjacent jurisdiction; (2) it is present in the district where the plaintiff is located; or (3) plaintiff has already obtained sufficient security for a judgment. *Aqua Stoli*, 460 F.3d at 436.

3

of the inquiry of whether a defendant is present in the district for purposes of Rule B – that is, consent to jurisdiction by a defendant that is otherwise not located in the district is necessary, but not sufficient, to be "present" so as to avoid Rule B attachment.

      Here, Brodosplit argues that it is present in the district by virtue of BS Sun, its alleged alter-ego, having initiated the Citgo Action in this district. Put another way, Brodosplit states that because Pilot's only claim against it rests on allegations that it is BS Sun's alter-ego, and because BS Sun consented to jurisdiction in this district by filing suit here against Citgo, by extension, Brodosplit must also be present in the district for the same reasons that BS Sun is present. Brodosplit has also expressly represented in its briefs that it consents to personal jurisdiction in this district. Pilot, on the other hand, argues that this Court has already rejected the identical argument posed by BS Sun in its letter briefs relating to the Rule B Attachment Order entered in the Citgo Action. That is, Pilot argues that because this Court entered a Rule B Attachment Order against BS Sun, it thereby implicitly rejected BS Sun's argument that it was present in the district by virtue of having filed the Citgo Action, and that by extension, Brodosplit is foreclosed from making the same argument by the doctrine of the law of the case.

      Both parties' arguments obfuscate the real issue in this case: whether Brodosplit can establish both prongs of the *Seawind* Test to establish that it is present in this district. That is, Brodosplit must show that it is both subject to personal jurisdiction and that it has an agent for service of process in this District. *See STX Panocean*, 2009 U.S. App. LEXIS 5751 at *7-8. I find that it has failed to do so. Even if I were to accept Brodosplit's argument that, by virtue of Pilot's allegations that it is BS Sun's alter-ego, it is subject to personal jurisdiction here because BS Sun consented to jurisdiction by filing suit here, that is only half of the inquiry. Brodosplit must also show that it (or BS Sun) is subject to service of process in this district. It has not done so – indeed, at oral argument its counsel expressly represented that Brodosplit does not have an agent for service of process in this District. Therefore, I find that Brodosplit is not present for the purposes of Rule B, and its motion to vacate the Rule B Attachment Order must be denied.[2]

---

[2] Brodosplit also makes the alternative argument that the underlying indemnity claim for which the attachment has been obtained fails to state a prima facie maritime claim cognizable under English law. The courts of this district consistently have found that when they are required to determine if a plaintiff has asserted a valid prima facie admiralty claim in ruling on a motion for vacatur, it should not conduct a full-fledged inquiry into the merits of the claim. *Totalmar Navigation Corp. v. ATN Indus., Inc.*, 08cv1659 (HB), 2008 U.S. Dist. LEXIS 97870, at *12 (S.D.N.Y. Dec. 3, 2008). "[A] detailed discussion of the merits . . . has little bearing on the motion to vacate, which is decided based on whether a prima facie claim is shown and technical requirements for attachment have been met." *Chiquita Int'l Ltd. V.M. v. Bosse*, 518

**B.     Reduction of the Amount of the Rule B Attachment**

A district court has the power, pursuant to Supplemental Rule E(6), to reduce the amount of an attachment when good cause is shown. *See Sea Transp. Contractors, Ltd. v. Industries Chemiques du Senegal*, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006).[3]  Rule E(5) provides that "the principle sum [of a security bond] shall in no event exceed (i) twice the amount of the plaintiff's claim or (ii) the value of the property on due appraisement, whichever is smaller." However, Rule (B)(1)(a) provides that "a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible property – *up to the amount sued for* – in the hands of garnishees named in the process." (emphasis added).

There is apparently a split of authority as to whether a Rule B order that authorizes the attachment of twice the amount of the principal claim is proper. Brodosplit points to a case out of the Eastern District of Louisiana that expressly upheld an attachment in an amount that was twice that of the alleged debt based on Rule E(5). *See Gulf Marine & Indus. Supplies, Inc. v. New Filipino Mar. Agencies, Inc.*, No. Civ. A 01-0555, 2001 U.S. Dist. LEXIS 4475 (E.D. La. Mar. 20, 2001). However, a recent case in this district expressly considered and rejected the *Gulf Marine* court's reasoning, finding that an attachment may not be double the principal claim amount. *Naftaservice Trading (Cyprus Ltd. v. Alaric Co. Ltd.*, 08 Civ. 0317 (SAS), 2008 U.S. Dist. LEXIS 3229, at *4-6 (S.D.N.Y. Jan. 22, 2008) (Haight, J.). In *Naftaservice*, Judge Haight reasoned that, assuming the *Gulf Marine* court approved the doubled amount, which was not altogether clear from the reported decision, it failed to analyze "how Rule B allows a plaintiff to commence its action by attaching property in an amount twice that the plaintiff alleges defendant owes, notwithstanding the provision in Rule B(1)(a) that property [may] be attached 'up to the amount sued for.'" *Id.* at *6. Thus, Judge Haight respectfully declined to follow the Louisiana court's position that Rule B allows such doubling. *Id.* Although he rejected the reasoning of *Gulf Marine*, Judge Haight in *Naftaservice* allowed the attachment to remain in an amount that covered the underlying claims in addition to interest, attorneys' fees and arbitration costs. *See* 2008 U.S.

---

F. Supp. 2d 589, 599 (S.D.N.Y. 2007); *see also Tide Line, Inc. v. Eastrade Commodities*, 06cv1979 (KMW), 2006 U.S. Dist. LEXIS 95870 (S.D.N.Y. Aug. 15, 2006) (finding that *Aqua Stoli* implicitly undermined the idea that a Rule E hearing is intended to "make a preliminary determination whether there were reasonable grounds for issuing the warrant"). Here, Pilot appears to have alleged sufficient facts to support an alter-ego relationship between BS Sun and Brodosplit to establish a prima facie claim against the latter based on the acts of the former. Accordingly, the Rule B Attachment Order will not be vacated on the alternative ground that Brodosplit presses.

[3] The court also has authority to reduce an attachment "upon a showing of improper practice or a manifest want of equity on the part of the plaintiff." *Chiquita Int'l Ltd. V.M. v. Bosse*, 518 F. Supp. 2d at 597.

Dist. LEXIS 5229 at *2, 7. I find Judge Haight's reasoning to be persuasive, and Brodosplit does not offer, nor has this Court located, any authority that follows Gulf Marine.

In this case, the "amount sued for" is $617,000, the value of the principal underlying claim, including estimated interest, attorneys' fees and arbitration costs and expenses. The Rule B Attachment Order authorized attachment in the amount of $1,234,000 – exactly double the amount of the principal claim. Pursuant to the foregoing analysis, I find that a reduction of the amount of the attachment to $617,000 is warranted.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion to vacate the Rule B Attachment Order is DENIED. Defendants' motion to reduce the amount of the attachment to US $617,000 is GRANTED. The parties are directed to submit an amended Rule B Attachment order that reflects the foregoing reduction within ten (10) days from the date of this Opinion and Order. The Clerk of the Court is instructed to close this motion and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
April 14, 2009

_____
U.S.D.J.

6